Caeuthees, J.,
delivered the opinion of the court.
Joseph I. Andrews, E. L. Andrews and Z. Andrews, being brothers, had for many years been doing business as partners in the cities of New York, New Orleans, Mobile and Memphis, under the firm name at New York, “J. I. Andrews & Brothers,” at New Orleans, “Andrews & Brothers,” at Mobile, “E. L. Andrews & Co., at Memphis, J. I. Andrews.” On the 30th September, 1843, the partnership dissolved, having large means, as well as heavy liabilities, which were by agreement to be paid by E. L. & Z. Andrews, who still continued the business under the old firm names. *538 The Mobile Bank held the paper of the firm for a large amount, but having notice of the dissolution and withdrawal of defendant, was unwilling to extend the credit by renewals, unless the defendant would still continue to be bound. Whereupon the following instrument was executed and delivered to the Bank:
“New OkleaNs, Nov. 13, 1843.

To the President and Directors of the BumTc of Mobile.

Gentlemen: The Bank of Mobile holds certain promissory notes of E. L. Andrews & Co., and Andrews & Brothers, of which firms I was a member until the 30th of September last. This is to witness, that E. L. Andrews and Z. Andrews, or either of them, is authorized to sign any notes with the name of the firm in liquidation, for the extension or renewal of said obligations, and I agree to continue my liability on such renewals or extensions as if I yet continued a member of said firms. Yours Bespecfally,
J. I. Andrews.”
Witness, A. Danvergne.
At the time of dissolution and the date of the power, the Bank held two notes on the firm of Andrews & Brothers; one dated March 8, for $8,640, and the other for $9,504, dated June J, 1843, 'both at twelve months. Also, two notes on E. L. Andrews & Co., one for $4,700, dated June 2nd, and the other for $6,400, dated June 28th, 1843. These were renewed and reduced by payments from time to time, until, as is alleged, they resulted in the notes now sued upon, viz: one on “Andrews & Brothers” for $6,480, at twelve months, dated June 5, 1849, and one *539 on tbe same for $4,320, at tbe same time, dated March 4, 1848, and one on E. L. Andrews & Co., at sixty days, dated 23d February, 1848, for $6,175.
Z. & E. L. Andrews continued to do business in tbe names of tbe old firms, until 1845, when they took in as a partner, Tbomas Brown, and continued tbe business in tbe same name and style, until tbe death of tbe Andrews’, on same day in 1849, and after tbe last renewals.
His Honor, tbe circuit judge, charged tbe jury that as tbe introduction of Brown into tbe firm in 1845, operated as a dissolution, tbe power given to Z. & E. L. Andrews by tbe defendant to bind him ceased, and be would not be liable on any paper signed by them after that time, and consequently must succeed in bis plea of non est faoium in this suit. In conformity to this direction there was verdict and judgment for defendant — motion for a new trial overruled, and appeal in error to this court. Upon tbe correctness of this legal proposition tbe case must turn, and it has been elaborately argued here on both sides. In view of tbe importance of tbe case, and tbe somewhat novel principle involved, we have held tbe case under advisement since tbe last term, and received and considered additional briefs at tbe present term.
There can be no controversy as to tbe soundness of tbe legal positions taken by tbe defendant’s counsel, that tbe death, or retirement of a member of a firm, as well as tbe introduction of a new partner, operates as a dissolution, and a power given previously to such firm, would terminate upon tbe happening of such event. It is true, also, that after a dissolution, tbe former part *540 ners cannot bind each other by new “contracts” without special authority to use the name of the firm. A renewal of a note existing at the dissolution, by any one member, without other authority, binds him individually only, and not the former partners. But all this does not touch the real difficulty in this case. The question is not as to the correctness of these familiar and well settled principles, to sustain which, it would be unnecessary at this day to enter into an argument, or refer to authorities. But the troublesome point here is, as to the proper construction of the power of attorney or letter of credit of Nov. 13, 1843. Upon this point there has been less argument and no authority precisely applicable produced. It is assumed in the charge of his Honor, and by the counsel of the defendant here, as the basis of their argument, that it is power given to the new firm in the old name, consisting of Z. & E. L. Andrews,: and if this be so, the consequences which they deduce from the incoming of Brown as to the cessation of the power to bind the defendant, might follow. But on the other hand, if the a power to bind him is vested in the brothers, as individuals in any designated name, or mode, the case would be entirely changed, and no such consequences' would result from the introduction of Brown. So the whole case must turn upon the construction of the instrument in this respect.
It is very well settled also, as insisted by defendant’s counsel, that a power of attorney must be strictly construed as to the extent of the authority conferred, and the principal cannot be bound beyond the limits prescribed by himself.
*541 What then, and to whom is this power given, according to a strict and fair construction of the writing? Is it to the new firm, or to the members of which it consists as individuals ? The defendant was equally bound with his brothers for these three notes, which were executed for money loaned to the firm, and of which he had enjoyed an equal benefit. It was the debt of all, and the Bank could have enforced the collection against all without any farther extension of time, but for this agreement of the defendant, that he would continue his liability to the Bank, on the notes they then held, or any new notes his brothers, or either of them, might execute, in “ renewals ■ or extensions,” in the same manner and to the same extent, as if the dissolution had not taken place, or he had continued a member of the firm. Or, in other words, that the power which his brothers had to bind him, when he was a partner with them, should still continue unchanged as to that particular paper. This was then a personal power given to them as individuals, and not as a new firm, and it was in no way qualified or limited, except as to the subject to which it applied. There were no conditions annexed to it as to the time of its duration, or the changes that might occur in the business, or firm relations of the brothers. It could only expire upon the extinguishment of the debts to which it related, or notice to the bank that he would be no longer bound. He could at any time revoke it by notice, and thus force the liquidation of the debts; or discharge himself from his continuing liability.
Not having done this, but silently permitting the bank to rely upon his unrevoked letter of credit, until *542 the failure of his brothers, it would be monstrous injustice to allow him to escape liability and cast the loss upon the innocent and indulgent creditor. Whether he be regarded as a principal, security, or guarantor, can make no difference, as in either case he would continue bound by the due exercise of the authority conferred until notice given of its revocation. If from the new business associations, their procrastination of payment, declining circumstances, or any other cause, he was unwilling to continue their authority to bind him, it was his duty to notify the bank of the fact. Nothing less than this could discharge him, or arrest the power communicated.
We therefore think his Honor erred in his construction of this power, and that the defendant is bound for the notes sued upon, if it be satisfactorily established that they were signed by either Z. or E. L. Andrews, and are for what remains due upon the notes referred to in the power of 1843.
Keversed and remanded.